UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JACK STUPPIN,                                         Case No. C-10-4114 EMC

        Plaintiff,

    v.                                               **FINAL PRETRIAL CONFERENCE
ORDER**

GAMBLING ARTISTS COLORS CO.,

        Defendant.
_____/

## I.    TRIAL DATE & LENGTH OF TRIAL

The jury trial shall begin on March 8, 2013, at 8:30 a.m., with jury selection, opening statements, and presentation of evidence (time permitting).  Evidence presentation and closing arguments shall be completed by March 22, 2013.  Generally, trial days shall last from 8:30 a.m. to 4:30 p.m., except on Wednesdays when trial adjourns at 2:00 p.m.  Thursdays are dark.  In addition, there shall be no trial day on March 15, 2013.

Mr. Stuppin shall have twenty (20) hours to present his case (direct and cross-examination but excluding the opening statement and closing argument which may be subject to separate time limits).  Gamblin shall have twelve (12) hours to present its case (with the same provisos).

## II.    AGREED-UPON MOTIONS IN LIMINE

The parties have submitted agreed-upon motions in limine regarding three subject areas: (1) exclusion of witnesses, (2) Gamblin's insurance, and (3) settlement efforts.  *See* Docket No. 62 (stipulations).  The Court hereby adopts these stipulations.

1

### III.   DEFENDANT'S MOTIONS IN LIMINE

A.   Motion in Limine No. 1 (Docket No. 67)

**Gamblin's first motion in limine to exclude testimony from and reference to Pauline Mohr is GRANTED in part and DEFERRED in part.  The motion is granted to the extent Ms. Mohr shall not be allowed to testify about her conversations with Mr. Stuppin's conservator expert or himself, nor shall other witnesses be allowed to reference those conversations.  The motion is deferred to the extent Mr. Stuppin seeks to have Ms. Mohr testify about her conversations with Mr. Pernicone or Mr. Stavroudis.  Mr. Stuppin is not permitted to call Ms. Mohr as a witness in his opening case but the Court reserves ruling as to whether she may be able to testify as part of his rebuttal case.  If neither Mr. Pernicone nor Mr. Stavroudis relies on information communicated to him by Ms. Mohr, then there will be no basis for Ms. Mohr to testify as part of Mr. Stuppin's rebuttal case.**

Gamblin's first motion concerns Ms. Mohr, an individual that Mr. Stuppin has identified on his witness list.  Ms. Mohr, an art conservator, was initially hired by Gamblin to be a testifying expert, including on the issue of whether Galkyd could be removed from the paintings at issue.  In November 2012, Gamblin withdrew Ms. Mohr as a testifying expert and replaced her with Chris Stavroudis.  See Docket No. 67 (Mot., Ex. 1).  According to Gamblin, Ms. Mohr continues to be one of its consultants or nontestifying experts.  Gamblin contends that, because she is a nontestifying expert, Mr. Stuppin should be barred from calling her as a witness or otherwise making any reference to her.

The starting point for the Court's analysis is Federal Rule of Civil Procedure 26(b)(4)(D).  That rule provides that

> [o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i)   as provided in Rule 35(b) [addressing physical and mental examinations]; or

2

(ii)    on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D).  Exceptional circumstances might exist where, *e.g.*:

- "the opponent has retained all available qualified experts," 32-23P Moore's Fed. Prac. – Civ. § 23.3;

- the nontestifying "'expert has unique expertise which may not be readily available,'" *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1046 (E.D. Cal. 2002); or

- "the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it," *United States Inspection Servs. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 623 (N.D. Cal. 2010); *see also FMC*, 196 F. Supp. 2d at 1046 (noting that "'exceptional circumstances might exist . . . where the [nontestifying] expert participated in tests which cannot be replicated by new experts'").

Mr. Stuppin, however, contends that the exceptional circumstances standard should be applied only where a person has been designated as a nontestifying expert from the outset – not in a situation in which a person has been designated a testifying expert and then "clawed back" and designated a nontestifying expert.  As Mr. Stuppin points out, at least one court has concluded as much.  *See House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 245 (N.D. Iowa 1996).

In *House*, the plaintiff sued, *inter alia*, her former employer for sexual harassment, a hostile work environment, and retaliation.  On the issue of emotional distress damages, she designated a testifying expert, a social worker.  Subsequently, the defendant designated its own testifying expert on the issue, a psychiatrist.  The psychiatrist examined the plaintiff more than a month after he had been designated as a testifying expert.  However, when the plaintiff noticed the psychiatrist for a deposition and moved to compel his report on the examination, the defendant moved to quash the deposition and sought a protective order precluding any discovery from him on the ground that the company had decided not to call the psychiatrist as a witness at trial.  *See id.* at 238.  A magistrate judge held that the plaintiff was entitled to the report under Federal Rule of Civil Procedure 35 but concluded that, under Rule 26(b)(4)(B) (*i.e.*, the predecessor to Rule 26(b)(4)(D)), the psychiatrist

could only be deposed upon a showing of exceptional circumstances, which had not been demonstrated. *See id.* at 238-39.

Subsequently, the defendant filed a motion in limine asking the district court to bar the plaintiff from calling the psychiatrist at trial. The court noted that the precise question before it was what standard to apply when (1) a party had designated a person as a testifying expert but then (2) withdrew that designation even though (3) the expert had already performed a Rule 35 medical examination. *See id.* at 246. Unlike the magistrate judge, the court rejected application of the exceptional circumstances standard, stating that that standard should apply only when a person was designated as a nontestifying expert at the outset, and not in a situation where a person was first designated as a testifying expert and then "clawed back." *See id.* at 245. Instead of the exceptional circumstances standard, the court applied what it called "[a] 'discretionary' standard, where the trial court's discretion is guided by a balancing of probative value against prejudice under Fed. R. Evid. 403." Id. at 246.

Applying that standard, the court concluded that it would not exclude the psychiatrist as a witness. The court noted first that the plaintiff had a legitimate interest in presenting the psychiatrist as a witness

> because he now has relevant information probative of plaintiff's
> alleged emotional distress, . . . and there is a difference between the
> nature of [the psychiatrist's] psychiatric evaluation and [the plaintiff's]
> own expert's methods, where [her] own expert [was] a social worker,
> not a physician, such that [the psychiatrist's] testimony [was] not
> merely cumulative of [her] own expert's opinion.

*Id.* at 247. The court also noted that the plaintiff seemed to have relied on the defendant's designation of the psychiatrist as a testifying witness before submitting to the medical examination: "[The plaintiff] was only asked to consent to an examination after [the psychiatrist] had been designated, and that consent may have been based, at least in part, on the expectation that [the psychiatrist] would testify at trial." *Id.*

The court, however, recognized that there was

> tremendous potential for prejudice to [the defendant] simply in the
> revelation to the jury that [the defendant] originally hired, designated,
> then dropped [the psychiatrist] as an expert after his examination of

4

> the plaintiff once [his] opinions were actually known.  [The defendant] should not suffer the obvious prejudice disclosure of its prior contact with [the psychiatrist] would likely have where that prejudice can be avoided.  The proper evidentiary issue remains [the psychiatrist's] opinion, not how he became involved in the case, as only his opinion serves the plaintiff's proper interests in discovering the truth of the plaintiff's claims.

*Id.* at 248.  The court thus concluded that, although it would allow the plaintiff to call the psychiatrist as a witness, it would *not* permit evidence as to "how he became involved in the case." *Id.*; *see also Brigham Young Univ. v. Pfizer, Inc.*, No. 2:12-mc-143 TS BCW, 2012 U.S. Dist. LEXIS 42051, at *16 (D. Utah Mar. 26, 2012) (following the approach taken in *House*).

Not all courts, however, have followed the approach taken by the court in *House*.  For example, unlike the *House* court, some courts have not automatically foreclosed application of the exceptional circumstances standard simply because a party has changed a designation of an expert from testifying to nontestifying.  Instead, in deciding whether to apply the exceptional circumstances standard, those courts have considered factors such as: (1) whether the expert has already issued an expert report; (2) whether the designating party relied on the expert's report or other testimony; or (3) whether the expert's designation was changed after the deadline to disclose experts or witness lists had already passed.  *See, e.g.*, *Hartford Fire Ins. Co., Inc. v. Transgroup Express, Inc.*, No. 09 C 3473, 2009 U.S. Dist. LEXIS 78982, at *8-9 (N.D. Ill. Sept. 1, 2009) (holding that "an expert does not fall within the protection of Rule 26(b)(4)(B) [*i.e.*, the predecessor to Rule 26(b)(4)(D)] once that expert's report is produced to the opposing party"); *Plymovent Corp. v. Air Tech. Solns., Inc.*, 243 F.R.D. 139, 144 (D.N.J. 2007) (concluding that, "under the particular circumstances of this case, [the plaintiff's] reliance (or attempted reliance) on the videotape and [expert] report at the preliminary injunction hearing did not effect a waiver of Rule 26(b)(4)(B)'s protection"); *Estate of Manship v. United States*, 240 F.R.D. 229, 237 (M.D. La. 2006) (considering whether experts had ever issued expert reports "or otherwise disclosed their opinions in this case"); *In re Shell Oil Refinery*, 132 F.R.D. 437, 440 (E.D. La. 1990) (stating that, "[p]rior to the court imposed deadline for exchange of witness lists, a party is free to make strategic decisions changing an anticipated witness to a non-witness" – even after disclosure of expert reports).  Under this line of cases, the

facts of this case would dictate that the exceptional circumstances test applies.  Neither factor (1), (2), or (3) obtain in the case at bar.

Still other courts have rejected *House* and held on to the exceptional circumstances standard even where, *e.g.*, there has been disclosure of an expert report.  *See, e.g.*, *Cooper v. Ciccarelli*, No. 07-2434-GLR, 2009 U.S. Dist. LEXIS 85840, at *3, 9 (D. Kan. Sept. 18, 2009); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 899 (N.D. Ohio 2009); *Calloway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, No. 01-669-### (MPT), 2002 U.S. Dist. LEXIS 15429, at *12-13 (D. Del. Aug. 14, 2002).

The *House* court's approach appears to be the minority position.  Moreover, arguably, *House* should be limited to its specific facts.  *See, e.g.*, *Manship*, 240 F.R.D. at 233 (noting that, "in *House*, the court was inquiring about the correct application of Rule 26(b)(4) when a 'Rule 35 medical examination ha[d] occurred' and noted the 'kind of reliance' created by 'submission to a medical examination by the designated expert'").  Were the exceptional circumstances test applied here as most courts have, *supra*, then Mr. Stuppin has failed to establish such a circumstance.

Even if the Court were to apply a *House* analysis in the case at bar, Mr. Stuppin's position on the merits would be problematic.  Mr. Stuppin seeks to have Ms. Mohr testify about (1) her discussions with his own conservator expert[1]; (2) her discussions with him; and (3) her discussions with other Gamblin experts, *i.e.*, Tony Pernicone and Mr. Stavroudis.

As to (1) and (2) above, the Court shall not permit testimony by Ms. Mohr, nor shall it allow other witnesses (such as Mr. Stuppin's conservator expert or Mr. Stuppin himself) to make reference to those discussions.  Based on what has been presented to the Court, it appears that Mr. Stuppin seeks to have these discussions introduced into evidence precisely to capitalize on the fact that Gamblin's own expert may have made comments or expressed opinions favorable to him.  But that is exactly what the *House* court recognized as being unfairly prejudicial.  Notably, Mr. Stuppin has not suggested that he be allowed to offer the discussions into evidence without making reference to the fact that Ms. Mohr was Gamblin's expert.

---

[1] Apparently, the parties reached an agreement where the conservator experts could talk to one another directly.

1          Other considerations also weigh against admissibility of the discussions between Ms. Mohr

2    and Mr. Stuppin's expert and between Ms. Mohr and Mr. Stuppin himself.  For example, in *House*,

3    the court permitted the psychiatrist's testimony in part because it was not cumulative of the

4    testimony of the plaintiff's own expert, who was a social worker and not a doctor.  That does not

5    appear to be the case here.  That is, based on what has been presented to the Court, it appears that

6    both Ms. Mohr and Mr. Stuppin's expert are conservators and both seem to share the opinion that

7    "Galkyd is removable but not in a financially reasonable fashion or without removing some of the

8    original paint from the surface of the painting."  Docket No. 64 (Joint PTC St. at 2) (stating such as

9    part of the undisputed facts).  Also, in *House*, the court made note of the fact that the plaintiff

10   seemed to have relied on the defendant's designation of the psychiatrist as a testifying witness.  In

11   the instant case, there is no comparable reliance by Mr. Stuppin on Gamblin's designation of Ms.

12   Mohr.

13          The Court's analysis, however, is different to the extent Mr. Stuppin seeks to offer testimony

14   by Ms. Mohr as to her conversations with Gamblin's other experts, Mr. Pernicone and Mr.

15   Stavroudis.  To the extent Mr. Pernicone's or Mr. Stavroudis's opinions are based on information

16   provided by Ms. Mohr, then the information provided by Ms. Mohr would, at the very least, be

17   discoverable.  *See* 7-37 Moore's Fed. Prac. – Civ. § 37A.21 (noting that "[i]nformation used by

18   consulting, non-testifying experts is usually not discoverable, unless 'exceptional circumstances' are

19   shown under Rule 26(b)(4) [but] information furnished by a non-testifying, consulting expert that

20   had been 'considered' by a testifying expert in forming opinions must be disclosed in the expert's

21   written report and is discoverable"); *see also Manship*, 240 F.R.D. at 238 (noting that "'exceptional

22   circumstances' may exist where a nontestifying expert's report has been used by a testifying expert

23   as the 'basis' for the testifying expert's opinion").  As a basis for another expert's opinion, Ms.

24   Mohr's testimony might be described pursuant to Federal Rule of Evidence 703 (discussed in detail

25   below).  In that event, Ms. Mohr's testimony would be dependent first on Mr. Pernicone's and Mr.

26   Stavroudis's testimony.  Thus, Ms. Mohr's testimony at best would be part of Mr. Stuppin's rebuttal

27   case.  And at this point, it is not clear whether Ms. Mohr's testimony would need to be part of the

28   rebuttal case.  For example, if Mr. Pernicone and Mr. Stavroudis testify (whether on direct or cross)

1    without any reliance on information provided to them by Ms. Mohr, then her testimony will be

2    unnecessary.

3        Accordingly, at this juncture, the Court grants in part the motion in limine and otherwise

4    defers ruling on the motion.  The motion is granted to the extent Ms. Mohr shall not be allowed to

5    testify about her conversations with Mr. Stuppin's conservator expert or himself, nor shall other

6    witnesses be allowed to reference those conversations.  The motion is deferred to the extent Mr.

7    Stuppin seeks to have Ms. Mohr testify about her conversations with Mr. Pernicone or Mr.

8    Stavroudis.  Mr. Stuppin is not permitted to call Ms. Mohr as a witness in his opening case but the

9    Court reserves ruling as to whether she may be able to testify as part of his rebuttal case.

10   B.    Motion in Limine No. 2 (Docket No. 70)

11       **Gamblin's second motion in limine to exclude the testimony of Curtis Frank is**

12   **GRANTED in part and DENIED in part.  The motion is granted only to the extent that Dr.**

13   **Frank is not qualified to express an opinion on whether "[a]dvice provided by Gamblin related**

14   **to claims of Galkyd being non-yellowing would likely have been followed by artists because of**

15   **Robert Gamblin's reputation."  Docket No. 70 (Frank Report at 4).**

16       In its second motion, Gamblin seeks to preclude the testimony of Mr. Stuppin's expert, Dr.

17   Frank.  Mr. Stuppin designated Dr. Frank as a rebuttal witness, more specifically, to rebut the

18   testimony of Gamblin's expert, Robert Gamblin.  Gamblin argues that Dr. Frank's testimony should

19   be excluded because, for the most part, it is not true rebuttal testimony – *i.e.*, the evidence is not

20   "intended solely to contradict or rebut evidence on the same subject matter identified" in Mr.

21   Gamblin's expert report.  Fed. R. Civ. P. 26(a)(2)(D)(ii).  Gamblin concedes that one part of Dr.

22   Frank's report may be proper rebuttal – *i.e.*, that part that addresses what was the cause of the

23   yellowing in the paintings.  Nevertheless, Gamblin asserts that testimony on that point should still be

24   excluded because it is based on the assumption that "[Mr.] Stuppin used an undercoating of GAC-

25   100 on his paintings rather than an undercoating of acrylic gel medium, as assumed by the Gamblin

26   report" and (more important) as supported by the testimony of Mr. Stuppin and his assistant and the

27   records of Mr. Stuppin's paint supplier.  Docket No. 70 (Mot. at 4); *see also* Part V.A.6, *infra* (ruling

28   on Exhibit 89).

8

1    The motion is granted in part and denied in part.  The Court largely agrees with Mr. Stuppin

2    that, when Dr. Frank's report is taken as a whole, it is clear that it is a rebuttal on the same subject

3    matter as Dr. Gamblin's report – *i.e.*, what was the cause of the yellowing in the paintings.  To the

4    extent Gamblin believes that Dr. Frank's opinion rests on an unwarranted assumption, it can cross-

5    examine Dr. Frank on that point.  The Court, however, does agree with Gamblin that Dr. Frank is

6    not qualified to express an opinion on whether "[a]dvice provided by Gamblin related to claims of

7    Galkyd being non-yellowing would likely have been followed by artists because of Robert

8    Gamblin's reputation."  Docket No. 70 (Frank Report at 4).  Therefore, he shall not be permitted to

9    provide an opinion on such.  However, Dr. Frank may be permitted to state that he is making the

10   *assumption* that "artists would be likely to follow Gamblin's advice."  Docket No. 78 (Opp'n at 5).

11   C.       Motion in Limine No. 3 (Docket No. 79)

12       **Gamblin's third motion in limine to exclude the testimony of Dan Lanahan is DENIED.**

13   **However, to ensure against any prejudice to Gamblin, the Court shall permit it to take a**

14   **deposition of Mr. Stuppin on the issue of the temperature study, as discussed below.**

15       Mr. Lanahan is a law student who works for Mr. Stuppin's counsel of record.  Contrary to

16   what Gamblin suggests, Mr. Lanahan does not appear to be an expert witness.  Rather, he largely

17   appears to be a sponsoring witness – *i.e.*, he will "authenticate a table [Exhibit 26] he prepared

18   showing the average temperature in Graton as compared with the temperatures obtained from a

19   temperature recording device placed in [Mr.] Stuppin's storage building [during the summer of

20   2012]."  Docket No. 64 (Joint PTC St., Ex. A) (Pl.'s Witness List).  Apparently, the device at issue

21   is a box thermometer in which one places paper recording disks, and the thermometer records the

22   temperature (in ink) on the paper disks.  Mr. Stuppin was the person who bought the thermometer,

23   who placed it in his storage building, and who replaced the paper in the thermometer on a weekly

24   basis.  Mr. Stuppin gave the paper disks to his counsel, and his counsel ultimately gave copies to

25   Gamblin – but not until the time of the parties' pretrial meet and confer in mid-January 2013.

26       Under Federal Rule of Evidence, "[a] proponent may use a summary, chart, or calculation to

27   prove the content of voluminous writings, records, or photographs that cannot be conveniently

28   examined in court.  The proponent must make the originals or duplicates available for examination

9

1  or copying, or both, by other parties at a reasonable time and place." Fed. R. Evid. 1006. Thus, in

2  principle, the table prepared by Mr. Lanahan and his related testimony are not objectionable,

3  particularly because the underlying paper disks appear to have been provided to Gamblin.

4        The Court, however, has concerns about whether evidence of the temperature study (whether

5  based on Mr. Lanahan's testimony or Mr. Stuppin's testimony) should be permitted given that Mr.

6  Stuppin did not provide the evidence to Gamblin until mid-January 2013, *i.e.*, during the parties'

7  pretrial meet and confer. At the hearing, Mr. Stuppin argued that he had no reason to offer the

8  evidence until December 2012 when Mr. Gamblin speculated during his deposition that the

9  temperature inside Mr. Stuppin's storage facility reached over 100 degrees. Mr. Stuppin contends

10  that the temperature study is simply rebuttal evidence in response to Mr. Gamblin's testimony.

11        The Court rejects Mr. Stuppin's attempt to characterize the evidence as mere rebuttal

12  evidence. Mr. Stuppin admitted at the hearing that he anticipated the issue regarding temperature

13  and thus set up the temperature study during the summer of 2012. Moreover, temperature was

14  clearly an issue given the tests conducted by Mr. Gamblin, as reflected in his expert report of

15  September 28, 2012. Thus, once the temperature study was completed in October 2012, the

16  information should have been disclosed to Gamblin as a supplemental initial disclosure pursuant to

17  Federal Rule of Civil Procedure 26(a) and (e).

18        Nevertheless, the Court shall allow the evidence to be admitted because it will prevent any

19  prejudice to Gamblin by allowing Gamblin to take Mr. Stuppin's deposition (no later than March 5,

20  2013), on the issue of the temperature study. Mr. Stuppin shall also make the thermometer

21  (including any packaging, instructions, etc.) available to Gamblin for an inspection by March 4,

22  2013.

23  D.      <u>Motion in Limine No. 4 (Docket No. 81)</u>

24        **Gamblin's fourth motion in limine to exclude evidence and argument concerning**

25  **internal Gamblin documents, in particular, the "Library of Answers," is DENIED.**

26        In the fourth motion, Gamblin asks the Court to exclude, in particular, documents from

27  Gamblin's "Library of Answers" (Exhibits 64-75). Gamblin argues that, because they are internal

28

1   documents only, they are not available to the public and therefore Mr. Stuppin could not have seen

2   or relied on the documents.

3          The motion is denied.  Some of Mr. Stuppin's claims may require reliance on representations

4   by Gamblin (*e.g.*, breach of express warranty).  *See, e.g.*, *Burr v. Sherwin Williams Co.*, 42 Cal. 2d

5   682, 695-96 (1954) (noting that "[t]he general rule is that privity of contract is required in an action

6   for breach of either express or implied warranty," although one "exception to the general rule is

7   found . . . where the purchaser of a product relied on representations made by the manufacturer in

8   labels or advertising material").  However, as Mr. Stuppin points out, his failure-to-warn claims are

9   based on Gamblin's internal knowledge that it did not disclose to the public.  Thus, the "Library of

10  Answers" documents are relevant, and Gamblin has failed to make out an adequate showing that the

11  evidence is inadmissible pursuant to Federal Rule of Evidence 403.

12  E.      Motion in Limine No. 5 (Docket No. 83)

13          **Gamblin's fifth motion in limine to exclude evidence and argument related to (1) a**

14  **change in Gamblin's resin supplier for Galkyd and (2) customer complaints made in 2008, *i.e.*,**

15  **after the change in the resin supplier (Exhibits 16-21) is GRANTED in part and DENIED in**

16  **part.  Evidence on the change in the resin supplier is admissible but only to the extent Dr.**

17  **Frank relied on the evidence in formulating his opinion.  Evidence as to the customer**

18  **complaints made in 2008 (Exhibits 16-21) is inadmissible.  The complaints largely focus on**

19  **drying time for the product, not the issue of yellowing.  Although one complaint mentions that**

20  **the "new" Galkyd "does not have the [t]ransparency the old [G]alkyd had," Ex. 19, that is still**

21  **different from a contention that the "new" Galkyd was causing yellowing.  That evidence has**

22  **no probative value to the claim still at issue.**

23  F.      Motion in Limine No. 6 (Docket No. 85)

24          **Gamblin's sixth motion to exclude evidence suggesting that Galkyd is defective is**

25  **GRANTED.**

26          In its final motion, Gamblin asks the Court to exclude any evidence suggesting that Galkyd

27  is defective because it is Gamblin's understanding that Mr. Stuppin is no longer making a products

28  liability claim based on a manufacturing or design defect.  In response, Mr. Stuppin confirms that he

1   is no longer bringing a claim based on defective product.  However, he argues that this should not

2   bar him from presenting evidence about Galkyd so long as it is relevant to the claims still in the

3   action.

4        The Court grants the motion because Mr. Stuppin is no longer making a claim based on

5   manufacturing or design defect.  However, as discussed at the hearing, this will not bar Mr. Stuppin

6   from presenting evidence that, *e.g.*, the qualities of Galkyd (such as susceptibility to yellowing) were

7   such that Gamblin should have given a warning to its customers.

8                    **IV.    PLAINTIFF'S MOTIONS IN LIMINE**

9   A.    Motion in Limine No. 1 (Docket No. 69)

10        **In the first motion, Mr. Stuppin asks the Court to exclude evidence and argument**

11   **related to any testing Mr. Gamblin performed which took place after March 2012.  The**

12   **motion is DENIED.**

13        Mr. Stuppin points to two rounds of tests that took place after March 2012 – *i.e.*, tests done

14   in April-May 2012 and tests done in September 2012.  According to Mr. Stuppin, these tests should

15   be excluded because, at a discovery hearing held on September 14, 2012, this Court ruled that Mr.

16   Gamblin's expert report should cover testing through March 2012 only.  Mr. Stuppin emphasizes

17   that Mr. Gamblin's September 2012 testing is particularly objectionable because that round of

18   testing took place *after* the Court's September 14 hearing.

19        Although the Court is not unsympathetic to Mr. Stuppin's position and finds the late

20   disclosure of the tests in contravention of the spirit if not the letter of this Court's directive, the

21   motion is denied for lack of prejudice.  As to the April-May 2012 tests, those should have been

22   brought to the Court's attention at the September 14, 2012, hearing.  Gamblin's failure to do so is

23   largely unexplained.  Nevertheless, Mr. Stuppin has failed to show that he would be unfairly

24   prejudiced if the April-May 2012 testing were included, particularly because that testing was

25   covered in Mr. Gamblin's expert report of September 28, 2012, submitted well in advance of trial.

26   Notably, Mr. Stuppin was able to depose Mr. Gamblin on the entirety of his September 28 report.

27        As for the September 2012 testing, counsel for Gamblin has represented that she was not

28   aware Mr. Gamblin intended to perform new tests.  *See* Docket No. 69 (Opp'n at 2).  The Court

finds this representation credible because, had she known, she clearly would have informed the Court at the hearing on September 14, 2012, and asked for those tests to be included in the expert report.  The Court also notes that, while it appears the September 2012 testing could have been done prior the hearing on September 14, there is some justification as to why it was not covered in earlier testing in February-March 2012 or even April-May 2012 – *i.e.*, because Mr. Gamblin did not take note of the issue of varnish thickness until the end of July 2012 when he was finally allowed to view 5 additional paintings that Mr. Stuppin claimed were damaged.  Finally, similar to above, the Court notes that Mr. Stuppin has failed to demonstrate that he would be unfairly prejudiced if the September 2012 testing was not excluded, particularly because that testing was a part of the September 28, 2012, expert report tendered by Mr. Gamblin, well in advance of trial.

The Court emphasizes here that it is not condoning Gamblin's conduct.  Given the issues discussed at the September 14, 2012, hearing, Gamblin should have informed the Court that Mr. Gamblin's expert report would be covering testing beyond March 2012 once it learned of that fact.  Nevertheless, in the absence of substantial prejudice, the Court will not exclude the evidence, although it would well be in its discretion to do so.  *See* Fed. R. Civ. P. 37(b)(2) (discussing sanctions available where a party fails to obey a discovery order); *see also* Fed. R. Civ. P. 37(c)(1) (providing that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless").

B.      Motions in Limine Nos. 2  and 3 (Docket Nos. 71-72)

**In the second and third motions, Mr. Stuppin asks the Court to preclude the testimony of one of Gamblin's experts, Mr. Pernicone.  Gamblin intends Mr. Pernicone to opine on two issues: (1) the cause of the yellowing of the paintings at issue and (2) the fair market value of the paintings at issue.  The second motion in limine addresses issue (1), and the third motion in limine addresses issue (2).  The Court GRANTS the second motion in limine but DENIES the third.  Mr. Pernicone may opine on the fair market value of the paintings, but not on the cause of the yellowing.**

With respect to the second motion, the Court agrees that Mr. Pernicone is not qualified to offer an opinion.  He is an art appraiser.  While being an art appraiser may make him knowledgeable about valuation of art, and while it may even make him "familiar enough with the *problem* of yellowing," Docket No. 71 (Exhibit A) (Pernicone Report at 4) (emphasis added), he has not demonstrated that that necessarily makes him knowledgeable about the *causes* of yellowing.  In its opposition, Gamblin points out that Mr. Pernicone states in his report: "I do have experience with the causes of yellowing in oil paints."  Docket No. 71 (Exhibit A) (Pernicone Report at 5).  But notably absent from both the report and Gamblin's opposition is any information as to what that experience is.  Furthermore, as Mr. Stuppin notes, Mr. Pernicone's report on the cause of yellowing is largely a regurgitation of the opinions of others.  "Federal Rules of Evidence 702 and 703 permit an expert to rely upon 'facts and data'" – not "to rely upon excerpts from opinions developed by another expert for the purposes of litigation."  *In re Imperial Credit Indus. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003); *see also American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) (noting that "[e]xpert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not").

Accordingly, the Court grants the second motion in limine, but it shall not bar Mr. Pernicone from providing testimony as a layperson, *e.g.*, to the extent he viewed the paintings at issue or the storage conditions for the paintings at issue.

As for the third motion in limine, Mr. Stuppin argues that Mr. Pernicone should not be allowed to opine on fair market value of the paintings at issue because he has concluded that he has no opinion.  This argument is without merit.  Mr. Pernicone has opined that there is insufficient data to establish a fair market value for the paintings at issue.  This is a direct criticism of Mr. Stuppin's expert who claimed to be able to reach a valuation.

C.    Motion in Limine No. 4 (Docket No. 73)

**In his fourth motion, Mr. Stuppin asks the Court to exclude evidence and argument related to Mr. Stuppin's use of (1) assistants and (2) visual outlines to prepare his paintings. The motion is DENIED.**

14

1    As Gamblin points out, Mr. Stuppin's use of assistants is relevant because it appears that, on

2  at least some occasions, they were the ones to apply Galkyd to Mr. Stuppin's paintings.  As for the

3  use of visual outlines, that may well affect the value of the final artwork.  Furthermore, as Gamblin

4  notes, how Mr. Stuppin prepares his paintings has relevance to the expert testimony of Mr. Gamblin

5  who performed tests on "paintings" where he tried to replicate Mr. Stuppin's painting process.

6  D.    Motion in Limine No. 5 (Docket No. 74)

7    **In the fifth motion, Mr. Stuppin seeks exclusion of evidence and argument related to**

8  **another Gamblin expert, Mr. Stavroudis.  The motion is DENIED.**

9    Mr. Stuppin argues that testimony by Mr. Stavroudis should be barred for multiple reasons:

10  (1) because he will testify to subjects broader than initially disclosed by Gamblin; (2) because his

11  expert report was not provided until late December 2012; (3) because his testimony is based (at least

12  in part) on untimely testing by Mr. Gamblin; and (4) because his testimony is unreliable as he never

13  examined any Stuppin painting in person (examining instead one of the "mock-ups" created by Mr.

14  Gamblin as a test) and at most looked at a photograph taken of a Stuppin painting.

15    The Court does not find any of the above arguments persuasive.  First, the initial disclosure

16  with respect to Mr. Stavroudis did not limit his testimony to whether Galkyd could be removed.

17  Rather, it simply indicated that Mr. Stavroudis was a conservator and a conservation science

18  consultant.  See Docket No. 74 (Exhibit A) (initial disclosures).  Thus, the initial disclosure on its

19  face indicated that Mr. Stavroudis would be testifying on issues related to conservation.  This could

20  include whether Galkyd could be removed, but it could also include, *e.g.*, what should be done to

21  properly preserve a painting and what should not be done to preserve a painting.

22    Second, although Mr. Stavroudis's expert report was not provided until late December 2012,

23  Mr. Stuppin has failed to make an adequate showing that he has been unfairly prejudiced as a result.

24  He was still able to take Mr. Stavroudis's deposition (in January 2013).  Although Mr. Stuppin

25  argues that he has been unfairly prejudiced because he was not able to prepare a rebuttal report, it is

26  telling that he does not appear to have asked Gamblin for the opportunity to prepare such a report --

27  this in spite of the fact that he was pressing Gamblin for Mr. Stavroudis's report precisely because "I

28  will need to see his report to determine if I need rebuttal experts."  Docket No. 74 (Exhibit H)

1  (e-mail, dated 12/12/2012, from Mr. Carle to Ms. Kaplan).  Nor has Mr. Stuppin (until now) brought

2  the issue to the Court's attention or sought dispensation for additional time to prepare a rebuttal

3  report.  The Court also takes into consideration that it is unlikely that Mr. Stuppin needed to have a

4  rebuttal report given that he already has his own conservation expert and that the opinions in the

5  Stavroudis report do not reveal any dramatically new issues.  However, to ensure against any

6  prejudice to Mr. Stuppin, the Court is willing to give Mr. Stuppin some leeway to expand the scope

7  of testimony of his own already-designated experts to include rebuttal of the opinions expressed by

8  Mr. Stavroudis.

9           Third, to the extent Mr. Stuppin argues that Mr. Stavroudis's opinions are based on untimely

10  testing by Mr. Gamblin, it is not clear that that is in fact the case.  Even if it were, the Court has

11  already ruled that it will allow the late testing into evidence.

12           Finally, to the extent Mr. Stuppin criticizes Mr. Stavroudis's opinions because they are based

13  on Mr. Gamblin's "mock-ups" and only a photograph of a Stuppin painting, those are arguments that

14  go to weight and not admissibility.  Mr. Stuppin has failed to make an adequate showing that the

15  limitations in Mr. Stavroudis's review render his opinion so unreliable that it should be excluded in

16  its entirety.

17  E.       Motion in Limine No. 6 (Docket No. 75)

18           **In the sixth motion, Mr. Stuppin asks the Court to exclude evidence and argument**

19  **related to the fact that, when looking for a rebuttal expert with respect to Mr. Gamblin's**

20  **testimony, Mr. Stuppin contacted Mr. Stavroudis.  The motion is GRANTED.**

21           Mr. Stuppin contends that the evidence is not relevant, see Docket No. 75 (Mot. at 3)

22  (arguing that "the contact does not go to whether Mr. Stavroudis is a qualified expert as [Mr.

23  Stuppin] never asked any questions nor received any information to determine that" because he cut

24  off the contact once he learned that Mr. Stavroudis had been retained by Gamblin), and further

25  asserts that it is unfair prejudicial under Rule 403.  The Court agrees.  The evidence has at best

26  marginal probative value for the jury.  Any probative value is substantially outweighed by the

27  danger of unfair prejudice.  Just as Mr. Stuppin should not be allowed to capitalize on the fact that

28

1   Ms. Mohr is Gamblin's expert, Gamblin should not be allowed to capitalize on the fact that Mr.

2   Stuppin happened to contact one of its own experts.

3   F.        Motion in Limine No. 7 (Docket No. 76)

4           **In his seventh motion, Mr. Stuppin asks the Court to bar evidence and argument to the**

5   **effect that Gamblin "'has never been sued for this kind of thing before.'"  Docket No. 76 (Mot.**

6   **at 1).  Mr. Stuppin maintains that such evidence is not relevant and further is unfairly**

7   **prejudicial.  In response, Gamblin argues that the lack of lawsuits against it goes to its state of**

8   **knowledge, which is relevant with respect to the failure-to-warn claims.  The Court DENIES**

9   **the motion.  Gamblin is free to argue that, because of a lack of lawsuits, it did not have**

10  **sufficient knowledge of a problem with yellowing to make it liable for a failure to warn, just as**

11  **Mr. Stuppin is free to argue that there were at least two customer complaints about yellowing**

12  **which put Gamblin on notice of a problem.**

13  G.        Motion in Limine No. 8 (Docket No. 77)

14          **Finally, Mr. Stuppin asks the Court to exclude evidence and argument related to the**

15  **disposition of the Galkyd bottles that he bought.  Mr. Stuppin argues that this is only fair**

16  **given that he has "dropped [his] products liability . . . defective product claims."  Docket No.**

17  **77 (Mot. at 2).  In response, Gamblin states that it will not oppose the motion but only after**

18  **Mr. Stuppin formally dismisses his product defect claims.  The Court GRANTS the motion.**

19  **Gamblin need not wait for a formal dismissal of the defective product claims because Mr.**

20  **Stuppin has now made a representation to the Court that he is dismissing the claims.  The**

21  **Court thus deems those claims dismissed, and with prejudice.**

22                                          **V.   EXHIBITS**

23          Per the Court's instruction, the parties have identified objections to exhibits (six apiece) for

24  which they seek an advance ruling.

25  A.        Plaintiff's Exhibits

26          1.        Exhibit 3a and 3b

27          Exhibits 3a and 3b are e-mails exchanged between Gamblin and a customer by the name of

28  Amy Bennett.  In the 2006 e-mails, Ms. Bennett asks questions about Galkyd, including whether it

                                                17

yellows over time, and Gamblin responds.  In the 2010 e-mails, Ms. Bennett identifies yellowing as a problem and asks for assistance; Gamblin responds.  Gamblin has objected to the e-mails on the basis of relevance and Rule 403.

The objections are overruled.  As Mr. Stuppin argues, the evidence is probative of Gamblin's knowledge about whether Galkyd causes a yellowing problem and its alleged failure to warn.

### 2.   Exhibit 18

Exhibit 18 is a customer complaint about Galkyd that post-dated the change in Gamblin's resin supplier.  The exhibit is the subject of Gamblin's fifth motion in limine.  The Court has granted the motion with respect to the customer complaints.

### 3.   Exhibit 39

Exhibit 39 appears to be evidence that the San Jose Museum of Art and a San Francisco art gallery exhibited certain landscape paintings by Mr. Stuppin.  Gamblin has objected to the evidence on the grounds of relevance and Rule 403.

The objection is overruled.  As Mr. Stuppin argues, the evidence is probative of damages. For example, a jury could infer from the evidence that Mr. Stuppin is a sufficiently well-known painter to be able to have his work exhibited.

### 4.   Exhibit 61

Exhibit 61 is a 2011 e-mail (*i.e.*, a post-litigation e-mail) from Gamblin to (what appears to be) a third party regarding changes to Gamblin's website.  Gamblin has objected to the evidence on the basis of relevance and Rule 403.  In response, Mr. Stuppin argues that the evidence is probative of Gamblin's knowledge, which is a component of the failure-to-warn claims.

The objection is sustained.  Gamblin's Rule 403 objection is, in essence, an objection based on Federal Rule of Evidence 407.  *See, e.g.*, *Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1277-78 (3d Cir. 1992) (noting that Rule 407 "operates on the presumption that undue prejudice is likely in certain situations, expressing a distrust of a jury's ability to draw the proper inferences from the evidence").  Rule 407 provides that, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence; culpable conduct; a defect in a product or its design; or a need for a warning or

1   instruction."  Fed. R. Evid. 407.  While the rule goes on to provide that "the court may admit this

2   evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or

3   the feasibility of precautionary measures," Fed. R. Evid. 407, the Ninth Circuit has made clear that,

4   under Rule 407, a subsequent warning is not admissible to establish *what was knowable earlier*.  *See*

5   *Rosa v. TASER Int'l, Inc.*, 684 F.3d 941, 948 (9th Cir. 2012) (where plaintiffs pointed to evidence

6   that defendant issued a warning in 2009 that explicitly discussed a medical risk, stating that this

7   evidence could not help plaintiffs avoid summary judgment "[b]ecause the fact of this 2009 warning

8   is not admissible to establish what was knowable in December 2008" under Rule 407); *see also*

9   *Adams v. Chevron U.S.A., Inc.*, 383 Fed. Appx. 447, 452 (5th Cir. 2010) (noting that Rule 407

10  "seeks to ensure that negligence is properly determined 'according to what the defendant knew or

11  should have known prior to the accident, not what the defendant knew as a result of the accident'")

12  (emphasis omitted); *Wetherill v. University of Chicago*, 565 F. Supp. 1553, 1557-58 (N.D. Ill. 1983)

13  (stating that "whether a claimed wrongdoer knew or should have known, but nonetheless did not

14  employ, remedial measures earlier" is a question that concerns the claimed wrongdoer's culpability

15  or negligence and therefore falls under Rule 407).  Accordingly, Mr. Stuppin's argument that the

16  evidence is admissible to establish Gamblin's knowledge at the relevant time is without merit.

17          5.      Exhibit 34

18          Exhibit 74 is one of the answers found in Gamblin's "Library of Answers."  The exhibit is

19  one of the exhibits subject to Gamblin's fourth motion in limine.  The Court has denied that motion

20  above.

21          6.      Exhibit 89

22          Exhibit 89 consists of documents that Mr. Stuppin's expert, Dr. Frank, used in forming his

23  opinions.  The documents can be loosely grouped into one of three categories: (1) statements made

24  by Gamblin (*e.g.*, on its website); (2) scientific articles written by others; and (3) statements made by

25  another artist paint supply company, Golden Artist Colors ("GAC") (*e.g.*, on its website) – in

26  particular, about one of its own products GAC 100.  Gamblin has objected to the evidence on the

27  basis of relevance and Rule 403.  It has also raised a hearsay objection.  Finally, Gamblin notes that

28  it reserves any objection based on the "[l]ack of specificity."  Docket No. 94 (Letter at 2).

The critical objections are the hearsay and Rule 403 objections.  In evaluating these objections, the Court must begin with Federal Rule of Evidence 703, which provides as follows.

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible *for the opinion* to be admitted.  *But if the facts or data would otherwise be inadmissible*, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion *substantially outweighs* their prejudicial effect.

Fed. R. Evid. 703 (emphasis added)  The advisory committee notes amplify what is contained in the text of Rule 703, explaining that, "when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted."  Fed. R. Evid. 703, 2000 advisory committee notes.  The notes then go on to explain:

> When information is reasonably relied upon by an expert and yet is admissible only for the purpose of assisting the jury in evaluating an expert's opinion, a trial court applying this Rule must consider *the information's probative value in assisting the jury to weigh the expert's opinion on the one hand*, and *the risk of prejudice resulting from the jury's potential misuse of the information for substantive purposes* on the other.  The information may be disclosed to the jury, upon objection, only if the trial court finds that the probative value of the information in assisting the jury to evaluate the expert's opinion *substantially outweighs* its prejudicial effect.  If the otherwise inadmissible information is admitted under this balancing test, the trial judge must give a *limiting instruction* upon request, informing the jury that the underlying information must not be used for substantive purposes. In determining the appropriate course, the trial court should consider the probable effectiveness or lack of effectiveness of a limiting instruction under the particular circumstances.

> . . . .

> [In essence,] [t]he amendment [to Rule 703] provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert.

Fed. R. Evid. 703, 2000 advisory committee notes (emphasis added).

Thus, per Rule 703, the Court must first examine whether the documents used by Dr. Frank in forming his opinions are independently admissible.  The statements by Gamblin are independently

admissible – *i.e.*, not hearsay – because they constitute statements by a party-opponent.  *See* Fed. R. Evid. 801(d)(2).  Therefore, the Court need not engaging in any Rule 703 balancing test, and the evidence may be disclosed to the jury.

As for the scientific articles, it is likely that they fall within the learned treatise exception to hearsay.  *See* Fed. R. Evid. 803(18).  Rule 803(18) provides that a statement contained in, *e.g.*, a treatise or periodical falls within the hearsay exception if the statement is relied on by the expert on direct examination and "the publication is established as a reliable authority by the expert's admission or testimony."  Fed. R. Evid. 803(18).  However, under the rule, the statements may be read into evidence only and not admitted as an exhibit.  *See* Fed. R. Evid. 803(18).  Accordingly, if Dr. Frank provides the necessary foundation, then the Court need not engage in any Rule 703 balancing test, and the relevant statements from the scientific articles may be read into evidence (but not admitted as exhibits).

This leaves only the statements on the website of GAC – in particular, about one of its own products GAC 100.  It appears that Mr. Stuppin will claim that he used GAC 100 as part of his painting process – and not, as Gamblin contends, an acrylic gel medium which, according to Gamblin, was at least a partial cause of the yellowing.  Based on the record submitted, these statements from GAC are hearsay and they do not appear to be otherwise independently admissible.  Accordingly, under Rule 703, the statements may be disclosed to the jury "only if their probative value in helping the jury evaluate the opinion *substantially outweighs* their prejudicial effect."  Fed. R. Evid. 703 (emphasis added).  The prejudice is typically that which would result from the jury's potential misuse of the information for substantive purposes.

Here, the probative value for allowing testimony as to this basis of Dr. Frank's opinion substantially outweighs any prejudice.  *See* Exhibit 83 (Frank Report at 5).  The Court, however, is open to giving "a limiting instruction upon request, informing the jury that the underlying information must not be used for substantive purposes."  Fed. R. Evid. 703, 2000 advisory committee notes.

B.      Defendant's Exhibits

      1.      Exhibit 110

Exhibit 110 consists of Mr. Gamblin's expert report.  Mr. Stuppin has objected to part of the report consistent with his first motion in limine.  The Court has denied the first motion in limine. The objection is overruled.

      2.      Exhibit 51

Exhibit 51 is a brochure for Gamblin oil painting mediums.  It is actually an exhibit that Mr. Stuppin submitted, but apparently Gamblin intends to rely on the evidence as well.  Mr. Stuppin appears to have no objection.  Thus, the exhibit shall be admitted as evidence.

      3.      Exhibit 116

Exhibit 116 is the expert report of Mr. Pernicone.  Mr. Pernicone's report itself is hearsay and therefore is not admissible.  *See Hunt v. City of Portland*, No. 11-35600, 2012 U.S. App. LEXIS 22506, at *4 (9th Cir. Oct. 24, 2012) ("conclud[ing] that the [expert's written] report is hearsay to which no hearsay exception applies").  However, Mr. Pernicone may still offer opinions consistent with the Court's rulings on Mr. Stuppin's second and third motions in limine.  To the extent Gamblin wishes to offer as evidence any of the exhibits attached to the report, a Rule 703 analysis must be applied.  Because there are numerous documents attached to the report, the Court shall not undertake a document-by-document Rule 703 analysis.  The analysis provided by the Court above with respect to the Frank report should provide some guidance.  The Court notes, however, that some of the documents would appear to be independently admissible (*e.g.*, Mr. Stuppin's invoices likely fall under the business records hearsay exception and the parties should meet and confer to determine whether they can agree that the foundational requirements for the exception have been met).

      4.      Exhibit 119

Exhibit 119 consists of portions of Gamblin's website.  Mr. Stuppin has not objected to the evidence.  Thus, the evidence shall be admitted.

1

2          5.        Exhibit 109

3     Exhibit 109 is a bottle of Galkyd.  Mr. Stuppin has reserved the right to make an objection

4 because the bottle "is old and may have been exposed to [an] unfavorable environment."  Docket

5 No. 94 (Letter at 3).  The objection is overruled.  Mr. Stuppin has not offered any basis to exclude

6 the evidence.  Any contention that the bottle is old and may have been exposed to an unfavorable

environment goes to the weight of the evidence and not its admissibility.

          6.        Exhibit 106

     Exhibit 106 consists of six photographs of a Stuppin painting, which were taken by Mr.

Stuppin's expert, Dr. Frank.  Mr. Stuppin objects on the basis that the exhibit is duplicative of one of

his own exhibits (Exhibit 83, which is Dr. Frank's report and exhibits).  In response, Gamblin notes

that the exhibits will be offered in the event that Dr. Frank and his report are excluded.  As discussed

in conjunction with Gamblin's second motion in limine, Dr. Frank may testify.  The Court notes,

however, that Dr. Frank's report itself is not admissible because it is hearsay but a Rule 703 analysis

would be applied to any facts or data on which Dr. Frank relied.

                              **VI.   DISCOVERY**

A.    Designations by Plaintiff

          1.        McMurray Deposition

     Mr. Stuppin has designated certain testimony from the McMurray Deposition, and Gamblin

has asked for additional testimony to be given (McMurray Deposition 50:25-51:2).  Mr. Stuppin

objects to that additional testimony.

     Mr. Stuppin's objection is overruled.  Ms. McMurray's opinion that Gamblin is a "great

company" has some probative value (albeit quite limited).  Just as Mr. Stuppin should be able to

introduce Ms. Bennett's poor opinion of Galkyd (see below), Gamblin should be able to introduce

Ms. McMurray's favorable opinion, both of the product and/or the company.  Furthermore, Rule 403

requires that the probative value of the evidence be substantially outweighed by the danger of unfair

prejudice.  That standard has not been met here.

2. <u>Bennett Deposition</u>

Gamblin's objection to Bennett Deposition 32:9-33:10 is sustained.  Here, Ms. Bennett testified:  "I called . . . Gamblin . . . at one point about Galkyd Lite to say that I had just used it on a painting, or a series of paintings, and that it was seeming to be – have a lot more color than usual, and it was just much more amber and less transparent, and I believe it was Scott who indicated to me that their resin supplier had changed, and that they were sorting things out . . . ."  As discussed above, the Court has ruled that it will allow evidence related to the change in Gamblin's resin supplier but only in conjunction with Dr. Frank's testimony.

Gamblin's objection to Bennett Deposition 38:12-25 is sustained in part and overruled in part.  Testimony about what others conveyed to her and what she told others is hearsay.  The testimony is otherwise admissible (*i.e.*, testimony that she did not expect Galkyd to yellow during her lifetime).

B.   <u>Designations by Defendant</u>

1.   <u>Plaintiff's Responses to First Set of Interrogatories</u>

Mr. Stuppin's objection to Interrogatory No. 16 is sustained.  The list of damaged paintings is not complete as Mr. Stuppin subsequently identified additional damaged paintings.  It is the Court's understanding that there is an updated response to Interrogatory No. 16 that includes all paintings at issue, which Gamblin may offer as evidence.

2.   <u>Plaintiff's Responses to Second Set of Interrogatories</u>

Mr. Stuppin's objection to Interrogatories Nos. 5 and 6 is overruled.  Although Mr. Stuppin formally objected to the interrogatories on the ground that they exceeded the limit in Federal Rule of Civil Procedure 33, he still decided to answer the interrogatories.  Thus, he effectively waived his objection, in spite of the fact that he claimed not to be making any such waiver.  Furthermore, Mr. Stuppin fails to identify how he would be prejudiced by admission of the evidence.

3.   <u>Plaintiff's Responses to Third Set of Interrogatories</u>

Mr. Stuppin's objections to Interrogatories Nos. 21, 22, and 23 are overruled.  His objections that the interrogatories exceed the limit in Rule 33 and that they exceed the scope of the additional

24

discovery permitted by the Court are effectively waived.  His Rule 403 objection has already been

addressed by the Court in Mr. Stuppin's fourth motion in limine (regarding use of assistants).

       4.    <u>McMurray Deposition</u>

Mr. Stuppin's objection to McMurray Deposition 48:12-25 is sustained.  As Mr. Stuppin

argues, this testimony about invoices goes beyond the scope of the direct testimony offered by Mr.

Stuppin.  Gamblin has not identified Ms. McMurray as one of its own witnesses.

As noted above, Mr. Stuppin's objection to McMurray Deposition 51:1-2 is overruled.

<strong>VII.   <u>DEMONSTRATIVES</u></strong>

As the Court stated at the hearing, the parties are to exchange demonstratives and stipulate to

their use in advance of trial.

<strong>VIII.   <u>VOIR DIRE</u></strong>

The parties have submitted joint additional proposed voir dire questions.  *See* Docket No. 61.

The Court shall ask many of the questions; counsel shall also have an opportunity to ask questions

themselves.

<strong>IX.   <u>JURY INSTRUCTIONS</u></strong>

The Court has submitted proposed jury instructions for the parties' review.  Comments on

the instructions, including but not limited to the future damages issue as discussed at the final

pretrial conference, are to be filed by March 1, 2013, at 4:00 p.m.

<strong>X.   <u>VERDICT FORM</u></strong>

The Court shall address the verdict form after jury instructions have been resolved.  As stated

at the hearing, the Court does not intend to give the jury special verdict forms; for the most part, it

shall give general verdict forms with limited exceptions (*e.g.*, comparative fault).

IT IS SO ORDERED.

Dated:  March 1, 2013

                                                              _____

                                              EDWARD M. CHEN
                                              United States District Judge